Michael J. **GUYERSON**, Petitioner,

The **PEOPLE** of the State of **Colorado**, Respondent.

No. 03PDJ077.

Feb. 19, 2004.

---

Attorney Regulation. Michael J. Guyerson was readmitted to the practice of law following a full readmission proceeding.

Opinion issued by a Hearing Board consisting of Presiding Officer RALPH G. TORRES, and Hearing Board members MADELINE A. COLLISON and ROBER M. MAES, both members of the bar.

## OPINION AND ORDER READMITTING MICHAEL J. GUYERSON TO THE PRACTICE OF LAW

### ATTORNEY READMITTED TO THE PRACTICE OF LAW

On January 7, 2004, a readmission hearing was held pursuant to C.R.C.P. 251.29(a) before a Hearing Board consisting of the Presiding Officer Ralph G. Torres and Hearing Board members Madeline A. Collison and Robert M. Maes, both members of the bar. Kim E. Ikeler, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). Michael J. Guyerson ("Guyerson") appeared on his own behalf. The following witnesses testified on behalf of Guyerson: Theodore A. Borrillo,

Lauren Quiat, Paul D. Rubner, James B. Dean, S. Kirk Ingebretsen (by telephone), Phillip D. Barber, David E. Graven, Rev. Larry J. Donoghue, Robert Mosher and Wendy Guyerson. Michael Guyerson testified on his own behalf. Petitioner's exhibits A, E, F, I, K, Q, U, V, W, and X were admitted into evidence in their entirety. The following exhibits consisting of affidavits were admitted for the limited purpose of establishing they were filed: exhibits B, D, H, J, L, M, N, and O. The first page of exhibit G was admitted into evidence. Pages 1 through 12 of exhibit P were admitted into evidence to establish that Guyerson submitted a statement in mitigation in the underlying disciplinary proceeding. Exhibit R was admitted for the limited purpose of establishing that Guyerson collected and transmitted checks to the recipients on behalf his church for a special collection involving Columbine High School.

The Hearing Board considered the testimony and exhibits admitted, the Stipulation of Facts submitted by the parties, considered the credibility of the witnesses, and made the following findings of fact, which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Michael J. Guyerson took the oath of admission and was admitted to the bar of the State of Colorado on October 10, 1981, attorney registration number 11279. Guyerson was disbarred from the practice of law in Colorado by Order of the Supreme Court on June 30, 1995, effective thirty days thereafter. *People v. Guyerson*, 898 P.2d 1062 (Colo.1995).

Beginning in approximately 1987, Guyerson and his wife determined to start a family. Numerous miscarriages occurred over a two-year period. Guyerson and his wife underwent costly infertility treatments and artificial insemination procedures, none of which were covered by insurance. Faced with the possibility of never being able to conceive, the Guyersons adopted a child, incurring additional expenses in adoptions fees and birth-mother medical expenses. Surprisingly, during this period of time, Mrs. Guyerson was

able to conceive a child and despite tremendous health risks to the mother, a healthy child was born in 1989. Less than one year later, Mrs. Guyerson conceived another child. Consequently, over a very short span of time, the Guyerson family unexpectedly grew to include three infants. The miscarriages, medical problems, infertility and adoption expenses created physical and emotional difficulties and were devastating to the family's financial resources. Eventually, Guyerson exhausted all savings and his family went into significant debt. Guyerson rationalized that he could obtain funds from his law firm through the submission of fraudulent expense reimbursement requests.

Beginning in late 1990 and continuing through part of 1993, Guyerson began to make certain falsified requests to his law firm for travel and other out-of-pocket expenses. Most of the requests were in amounts of $200 to $300. As a result of the fraudulent billing statements, Guyerson improperly received a total amount of approximately $13,500 from his law firm. Guyerson concealed his embezzlement from his wife. Guyerson's conduct continued until July 1993, when he was asked for receipts to substantiate certain items for which he had received funds. *Guyerson*, 898 P.2d 1062. He initially said he would look for related billing receipts, and subsequently submitted unrelated receipts for the funds in question. When confronted, Guyerson finally admitted he had submitted improper expense requests and assisted the law firm in reconciliation of all accounts and records. He made full restitution to the firm and forfeited his capital account.[1] Guyerson disclosed his misconduct to the then Office of Disciplinary Counsel. He declared bankruptcy in September 1993. After leaving the firm, Guyerson became affiliated with another law firm as special counsel and continued to practice law without incident for approximately two years during the period his disciplinary action was pending.

Thereafter, Guyerson was charged with and pled guilty to felony theft and received a one-year unsupervised deferred judgment. *Guyerson*, 898 P.2d at 1063. He fully complied with all terms of the stipulation in the criminal matter and charges were ultimately dismissed by court order in May 1995.

The Order of Disbarment required that Guyerson pay costs arising out of the underlying disciplinary proceeding. He paid all costs of the disciplinary action and filed the requisite affidavit with the Colorado Supreme Court indicating his compliance with all disciplinary orders pursuant to C.R.C.P. 241.21.[2] Guyerson fully complied with all past disciplinary orders.

Following his disbarment, Guyerson sought and obtained employment in a variety of positions. He worked as a paralegal on a contract basis for several different attorneys and organizations. As part of his contract paralegal work, Guyerson billed for his services and sought reimbursement for out-of-pocket expenses, mileage and costs. Attorneys for whom Guyerson performed contract paralegal work attested to Guyerson's accuracy with regard to his paralegal billing statements, and his honesty and integrity in his dealings with others. At one point, Guyerson sought and obtained a position with a company as a full time paralegal, a position he coveted in order to provide health benefits to his family. However, when he believed the actions of one of the company officers were potentially unethical, he immediately resigned the position.

Guyerson also worked in the loan department of a local bank for approximately eleven months in 1999 and 2000 and prepared loan documentation. He was trusted with access to the bank's collateral vault, he routinely issued checks for closing costs and other disbursements, and filed and recorded collateral documents, liens and releases. He also worked for American Express handling financial transactions. Both in his position at the bank and his employment with American Express, he was entrusted to handle valuable documents and assets.

Guyerson also attended night classes and, after an eighteen-month period, obtained a

---

1. Guyerson had become a partner at the firm in 1988.

2. C.R.C.P. 241.21 was replaced with and renumbered as C.R.C.P. 251.28 effective January 1, 1999.

Certificate in Financial Planning, including several hours of business and personal ethics. Thereafter, Guyerson provided business and personal financial consulting to clients and to members of his church and community. He also presented seminars on responsible financial management through his church. In this capacity, clients routinely entrusted original documents and items of value to him for safekeeping and he handled them responsibly.

Guyerson anonymously published an article in The Docket, a publication of the Denver Bar Association, on the experiences of a disbarred attorney in the January 2003 issue. His intent in doing so was to dissuade other attorneys from engaging in the conduct that has resulted in his being disbarred, while preserving the anonymity of his family in the interests of his children.

Guyerson has been and continues to be active in his church and community. He has served as an usher collecting contributions for the church and was entrusted with the unsupervised counting of church collections. Guyerson also served on the building and bishop's committee of his church and was actively involved in fund raising and budgeting for church construction and operations. He gained the trust of his church community to ethically handle funds on behalf of the church community. Guyerson presented numerous seminars and programs on financial stewardship, personal money management and making the right ethical and moral decisions regarding money and finances through his church.

Guyerson has been active in his community, volunteering as a parent and coach for the Southwest YMCA, the South Jeffco Sports Association, and Apache League Baseball. He has helped deliver Thanksgiving baskets to the needy and participated in a Habitat for Humanity Project in Longmont, through his church. He is an involved and attentive parent to his three children.

The Guyerson family remained together throughout the difficulties arising from Guyerson's misconduct. They are now able to live within their means and have good income and a positive net worth, and have purposefully eradicated the financial pressures that resulted in Guyerson's misconduct. Guyerson now communicates with his wife where before he did not share financial and other concerns with her. He previously believed that because clients seek a lawyer's help in resolving problems, lawyers could not have problems themselves and could not share the problems with others. He no longer adopts this way of thinking.

Guyerson underwent therapy to assist in discovering and resolving the character deficit that led to his disbarment. He realized that he believed at the time he was entitled to the funds, and justified taking them because of the personal stress he and his wife experienced as a result of the attempts to start a family. He rationalized his behavior, thinking the amounts he took from various clients would not harm them and would help his family. During the eight years following his disbarment, he matured considerably. Stripped of his identity as a lawyer, he evaluated the character flaws that caused the misconduct. Through this process, he realized that it is acceptable to fail and move on from a position of failure. He realized the magnitude of his actions and the disrespect this brought upon the profession and his family. He is determined to set an example for his children and the profession. Guyerson demonstrated remorse for his conduct.

## II. CONCLUSIONS OF LAW

Michael J. Guyerson, is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

C.R.C.P. 251.29(a) provides:

**Readmission After Disbarment.** A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment. To be eligible for readmission the attorney must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admission to the Bar. The attorney must file a petition for readmission, properly verified, with the Presiding Disciplinary Judge, and furnish a copy to the Regulation Counsel. Thereafter, the petition shall be heard in procedures iden-

tical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter. A Hearing Board shall consider every petition for readmission and shall enter an order granting or denying readmission.

■ *People v. Klein,* 756 P.2d 1013, 1016 (Colo.1988), *interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria which must be considered in readmission proceedings in order to evaluate an attorneys rehabilitation. Klein requires:*

> [A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the respondents state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondents life, and the respondents recognition of the seriousness of his previous misconduct.

*An attorney seeking readmission following disbarment must establish compliance with the provisions of C.R.C.P. 251.29(c). Those provisions are as follows:*

> The facts other than the passage of time and the absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;

> Evidence of compliance with all applicable disciplinary orders and with all provisions of this chapter regarding actions required of suspended attorneys;

> Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

■ Guyerson has complied with all prior court orders, has filed the required affidavit and paid all costs of the underlying disciplinary action. He paid full restitution with interest to his law firm.

Guyerson has demonstrated through his employment and his volunteer activities that he can be trusted to collect and account for funds. In his employment as a contract paralegal, he submitted billing statements to the attorneys for whom he worked, who attested to his forthrightness and honesty in his billing practices. In his other employment as a loan document specialist and at American Express, he was entrusted with securities, promissory notes and other valuable documents and assets. He has worked diligently to stabilize his difficult personal financial situation, and has obtained a degree in financial planning in order to maintain his business and personal finances.

Through his church and other community commitments, he presented financial planning seminars, counseling others to avoid the same type of mistakes he made. Guyerson anonymously wrote an article about his misconduct and the consequences resulting from the disbarment as a means of deterring other members of the bar from similar misconduct. Through these actions, Guyerson has attempted to demonstrate his sincere remorse for his misconduct. He also openly acknowledged the wrongfulness of his actions with attorneys for whom he worked as a paralegal.

Guyerson sat for and passed the July 2003 Colorado Bar Exam and the August Multistate Professional Responsibility Exam. He has continued to maintain his legal skills and abilities. He has taken numerous Continuing Legal Education courses to update his understanding of the law. He has endeavored to improve his paralegal services and to keep his analytical skills sharp and focused by regularly reading *The Colorado Lawyer* and *The Annual Survey of Colorado Law.*

Guyerson has made a contribution to his community through volunteer activities: he volunteers regularly at his church, and he is active in his children's activities through the YMCA and local sports associations as a coach and volunteer parent.

Guyerson candidly admits the wrongfulness of his actions. He is determined to act as a roll model for his children. He believes that the approach he took to his disbarment to admit the gravity of his misconduct and pursue the long road of readmission to the bar has provided his children with an example of his admitting his grave mistake and demonstrating rehabilitation through action. The Hearing Board finds based on the analysis set forth above that Guyerson has established rehabilitation by a clear and convincing standard.

However, insofar as the Hearing Board is charged with the important responsibility of protecting the public, the Hearing Board finds that given the seriousness of Guyerson's prior misconduct, a practice monitor is warranted to oversee Guyerson's initial representation of clients after readmission. The Hearing Board therefore imposes the condition of a practice monitor on Guyerson's practice for a period of one year. The practice monitor shall be selected by Guyerson and paid by him for his services. The practice monitor shall review any and all financial transactions involving Guyerson's legal representation of clients, and shall review Guyerson's trust and operating accounts in the event he is in a sole practice. The practice monitor shall then submit a quarterly report with the Office of Attorney Regulation Counsel for a one year period of time effective ninety-one days from the date of this Order.

## III. ORDER

It is therefore ORDERED:

1. MICHAEL J. GUYERSON'S Petition for Readmission is GRANTED;

2. Within thirty-one days of the date of this Order, Guyerson shall arrange for a practice monitor to oversee his financial transactions with his clients. The practice monitor shall oversee Guyerson's practice for a one year period commencing thirty-one days from the date of this Order.

3. Guyerson is ordered to appear at the Office of Attorney Registration or appear before Presiding Officer Torres to be sworn in. Guyerson shall pay all necessary dues to the Office of Attorney Registration within thirty-one days of the date of this Order. Guyerson shall be given his original attorney registration number.

4. If any costs are due and owing arising from Guyerson's readmission, Guyerson shall pay all reasonable costs within sixty (60) days of the date of this Order. If any amounts are due Guyerson, they shall be tendered to him within sixty (60) days of the date of this Order. In the event there is a dispute over costs, the parties shall file motions to that effect with the Office of the Presiding Disciplinary Judge forthwith.